**UNITED STATES v. OWEN.**

No. 18015.

United States District Court
W. D. Missouri, W. D.

June 8, 1951.

Sam M. Wear, U. S. Atty., David A. Thompson, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

McReynolds, Flanigan & Flanigan, Carthage, Mo., Madden & Burke, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

Able and earnest counsel for defendant have moved for the production of a complete transcript of the witnesses' testimony before the grand jury in so far as said testimony relates to the defendant. They ask also for a complete transcript of the defendant's testimony before the grand jury.

One of the assigned reasons for the motion is that such information "is essential to the preparation of his defense herein, including the preparation and presentation of appropriate motions to quash or dismiss the indictment heretofore returned, and without such information defendant cannot exercise valid rights in the respects aforesaid or prepare or present valid existing defenses.".

The motion is resisted by counsel for the government. The briefs and citations of the parties have been examined.

The indictment is in two counts and is based upon Section 1621 Title 18 U.S.C.A. relating to the general subject of Perjury. The first count related to the defendant's denial of an acquaintance with one Harold Moore residing in Carthage, Missouri. His answer to the question as to whether he knew him was, "No, I don't believe I do." The memory of the defendant was then refreshed by suggesting alleged transactions he had had with the said Moore and others at the general election of 1950. He denied the events used to refresh his memory, by saying, "No sir, I never did." When reminded that the named persons had affirmed such a transaction with the defendant and asked if he knew why they would make such a statement, his answer was, "No, sir." The second count of the indictment involved the alleged payment of $2 to the Reverend J. E. Roberts for voting at the general election of 1950. The defendant answered that he knew Reverend J. E. Roberts. And then, this question was asked: "Did you pay parson $2?" The answer was, "No, sir."

It is alleged in both counts of the indictment that the answers so returned were false and untrue and willfully and falsely made and known to be untrue.

Upon these specific averments of the indictment counsel for the defendant seek the grand jury minutes covering the testimony of all witnesses, including that of the defendant, in relation to the subject matter of the indictment.

1. A grand jury in the national government is provided for by Amendment V of the Constitution in the following language: "No person shall be held to answer for a capital, or otherwise infamous crime unless on a presentment or indictment of a Grand Jury". The amendment is silent on the subject of the composition and procedure of a grand jury. This means, of course, that the grand jury in the national government was the same as at common law and as the common law existed at the time the amendment was adopted near the

end of the 18th century. It is necessary, therefore, to look to the common law to determine both the composition and the procedure before federal grand juries.

The common law rule was so rigid that disclosures of proceedings before a grand jury could not be made by any one, even a grand juryman himself. Severe penalties attached to such disclosures. Since the provision for a grand jury is imbedded in the Constitution it is probably beyond the reach of the legislature to alter or modify or relax in any way the common law rule placing the veil of secrecy over grand jury proceedings.

2. Paragraph (e) of Rule 6, Federal Rules of Criminal Procedure, 18 U.S.C.A., makes limited provision for the disclosure of matters occurring before the grand jury (other than its deliberations and the vote of any juror) and such may be made to the attorneys for the government for use in the performance of their duties. "Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

Whether other parts of the rule are valid as opposed to the common law may be a question, particularly the sentence: "No obligation of secrecy may be imposed upon any person except in accordance with this rule."

However, that is not a question for decision here. The only question is whether the defendant, through his counsel, has by their motion made "a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

3. An examination of the authorities discloses that the power to grant an inspection of grand jury records and proceedings is a power to be "sparingly exercised." 23 C.J.S., Criminal Law, § 956, pp. 265–266; United States v. Herzig, D.C., 26 F.2d 487. And, as said in the very recent case of United States v. Brothman,

D.C., 93 F.Supp. 368, 371, in relation to the inspection of grand jury records: "While the Court has the power to do so, it should rarely be exercised." This opinion was written by Judge Weinfeld, District Judge in the S. D. of New York and was filed October 10, 1950.

The Supreme Court of the United States in quoting from Wigmore, while acknowledging that grand jury proceedings usually are confidential, said, "But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, loc. cit. 234, 60 S.Ct. 811, loc. cit. 849, 84 L.Ed. 1129. The court said this, however, in upholding the trial court in its refusal to make the grand jury records available to counsel for the defense.

The Court of Appeals, 2nd Circuit, in United States v. Alper, 156 F.2d 222, 226, recognized the same right when it said: "After an indictment has been found and the accused apprehended, the veil of secrecy surrounding grand jury proceedings *may safely be lifted where justice so requires.*" (Emphasis mine.) And then the court proceeded to assign many reasons why the record should not be made available.

In another recent case, United States v. Papaioanu, 10 F.R.D. 517, loc. cit. 518, Judge Leahy of the District Court of Delaware expressed the rule as follows: "The first obstacle defendant must surmount is that the secrecy of proceedings of a Grand Jury is fundamental to our criminal procedure." This is an apt and perfect digest of all the court opinions. In Schmidt v. United States, 115 F.2d 394, 396, the Court of Appeals for the 6th Circuit called attention to the rigid rule of the common law which undoubtedly prevails with federal grand juries, and announced the doctrine, however: " * * * that if after the indictment and apprehension of a defendant a disclosure becomes essential to the attainment of justice and the vindication of truth, the testimony of witnesses before the grand jury may be inquired into."

The liberal attitude of the 4th Circuit Court of Appeals in Atwell v. United States,

162 F. 97, was due to the fact that Atwell, as a grand juryman, had unwittingly made disclosures of proceedings before the grand jury and for which he was held in contempt. In a habeas corpus proceeding the Court of Appeals ordered his release for the reason that no one was harmed by the disclosures, and, as indicated, such disclosures were unwittingly made.

In Goodman v. United States, 108 F.2d 516, 519, 127 A.L.R. 265, the Court of Appeals for the 9th Circuit again laid down the broad proposition that: " * * * the evidence taken before grand juries is confidential matter, to which the accused person has no right of access." The same ruling was made in Metzler v. United States, 64 F.2d 203 by the Circuit Court of Appeals for the 9th Circuit.

4. Attention is called to the case of Fotie v. United States, 8 Cir., 137 F.2d 831, 842, not because it involved a matter before a grand jury, but excerpts from testimony before another tribunal where there was no obligation of secrecy and the matter was not confidential. The court criticized the procedure in the following language: "A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows."

5. In the instant case the immediate context relating to the claimed false testimony has been lifted out and incorporated in each count of the indictment. It would have been a simple matter for the defendant to have said whether the defendant knew Harold Moore when he was reminded of the exact address of the said Harold Moore. His answer was, "No, I don't believe I do." Then, when further reminded of alleged transactions with the said Moore in connection with others he categorically denied all of them. He either knew the said Harold Moore or he did not. And he either had the transactions alleged in the indictment or he did not. It would be difficult to infer that any other testimony would qualify or explain this positive and categorical answer.

The same thing is true of the second count of the indictment. Either he paid $2 to the said J. E. Roberts for vot-ing or he did not. He answered that he did know the Reverend J. E. Roberts but he said positively that he did not pay him $2 in connection with a general election. Again, it seems incredible that any other testimony before the grand jury would modify or alter these positive denials. Either the answers were true or they were false. The grand jury said they were false and willfully made in the light of other evidence before that body.

The defendant is advised who the parties were with whom the alleged transactions were had and thus knows who the witnesses are and has all the information needed for his defense.

6. Furthermore, the statute specifically provides that disclosures may be made by permission of the court, "at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." No such grounds appear here, and, moreover, the verification of the motion is upon information and belief, which would make it purely hearsay.

All of the authorities cited by the parties have been examined and no other conclusion seems proper save that the motion to produce should be overruled, and it will be so ordered.