**UNITED STATES v. ROSE.**

No. 12217.

United States District Court
M. D. Pennsylvania.

July 10, 1953.

Frank W. Towey, Jr., Sp. Asst. to the Atty. Gen., Washington, D. C., Arthur A. Maguire, U. S. Atty., Scranton, Pa., for plaintiff.

John H. Bigelow and Anthony J. Ciotola, Hazleton, Pa., Francis J. Myers and Cornelius C. O'Brien, Jr., Philadelphia, Pa., for defendant.

MURPHY, District Judge.

Defendant convicted of perjury, 18 U.S. C.A. § 1621, moves for judgment of acquittal[1] and for a new trial. A grand jury, investigating whether the government was defrauded as to the cost of operations of "G. I. Schools", questioned defendant as a supplier of York Painters and Paperhangers Training School, Inc. It appeared that the school purchased tools from the Peerless Wall Paper Company for $5870.08. There was, however, apparently covering the same transaction defendant's invoice and a cancelled school check to defendant's order for $10,583.04.

Inquiring into the good faith of the transaction the grand jury asked defendant what he did with the check and the proceeds thereof. He said he cashed it at the Northwestern National Bank; paid about $1500.-00 cash on one transaction to the Federal Wall Paper Company; about $3000.00 cash on another transaction to the Fidelity Paint and Varnish Company; placed the balance in a bureau drawer at home; and that he did not have a safe deposit box. One commits perjury when he knowingly states contrary to his oath any material matter which he does not believe to be true. United States v. Seavey, 3 Cir., 180 F.2d 837, certiorari denied 339 U.S. 979, 70 S.Ct. 1023, 94 L.Ed. 1383.

There was sufficient competent evidence from which the jury could reasonably find that defendant testified falsely in each instance.

Defendant asserts absence of material matter; the evidence does not meet the standard required in perjury cases; error in ruling on defendant's points for charge, and in refusing his requests to inspect the transcript of his grand jury testimony.[2]

Materiality was a question of law for the court. Sinclair v. United States, 279 U.S. 263, at page 298, 49 S.Ct. 268, 73 L.Ed. 692; Carroll v. United States, 2 Cir., 1927, 16 F.2d 951, at page 954; United States v. Slutzky, 3 Cir., 1935, 79 F.2d 504, at page 506; Steinman v. McWilliams, 6 Pa. 170 at page 177. The test is whether the testimony has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation. United States v. Moran, 2 Cir., 1952, 194 F.2d 623, at page 626. It is not negatived by the fact that a truthful answer would not have made the inquiry more successful. United States v. Goldstein, 2 Cir., 1948, 168 F.2d 666, at page 671. The scope of the inquiry should not be limited by doubts as to whether or not anyone would be indicted. Blair v. United States, 250 U.S. 273, at page 282, 39 S.Ct. 468, 63 L.Ed. 979. Defendant had a duty to give truthful answers. United States v. Johnson, 1943, 319 U.S. 503, at page 510, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Norris, 300 U.S. 564, at

---

1. Defendant's motion at the close of the government's evidence was denied. He rested immediately. The motion was not renewed until four days after verdict when it was also assigned as a reason for a new trial. Cf. Fed.Rules Crim.Proc. rules 29(a, b), 33, 18 U.S.C.A. The notes of testimony were not transcribed.

2. Defendant's claim of error in mathematical calculations during trial are not supported by the record. He argues the evidence was as consistent with innocence as with guilt. We gave the customary charge on circumstantial evidence, but see Com. v. Grosso, 169 Pa.Super. 606, at page 610, 84 A.2d 239; United States v. Dolasco, 3 Cir., 1950, 184 F.2d 746. The weight of the evidence and credibility were questions for the jury. Adams v. United States, 1951, 9 Cir., 191 F.2d 206.

page 574, 57 S.Ct. 535, 81 L.Ed. 808. The grand jury had a right to know whether or not the criminal laws of the United States had been violated. The matter involved was obviously material.

### As to quantum and quality of the evidence.

■ A vice president of the Northwestern Bank testified (Count I) that defendant deposited the entire amount of the check to the account of Maurice or Bessie Rose. Against the deposit he drew a check—not the usual counter check—to cash for $3534.-72;[3] drew a check payable to Peerless Wall Paper Company for $5870.08, and requested it be certified. Certification was delayed several days until the $10,583.04 check cleared the drawee bank. As corroboration the government produced the three checks, the deposit ticket, the bank's ledger card, and microfilms reflecting the transactions involving defendant's account.

Philip Cohen, of Federal (Count II) and John Urban, of Fidelity (Count III) each denied having any such transaction with defendant. As corroboration they produced their books of account, records, invoices and deposit tickets.

There was testimony that defendant requested Mr. Urban to write and date back a letter to prove the defendant had a transaction with him about the time covered in defendant's testimony, and that defendant threatened him with jail if he did not comply. He refused.

■ Evidence of misconduct of a party in connection with the trial of his case is admissible as tending to show that he was unwilling to rely upon the truth of his cause. United States v. Katz, D.C.M.D. Pa., 78 F.Supp. 435, at page 438, affirmed 3 Cir., 173 F.2d 116; Vetterli v. United States, 9 Cir., 1952, 198 F.2d 291 at page 294.

A bank employee testified defendant did have a safe deposit box at the bank (Count V). Originally in defendant's name only, the names of his wife and daughter were later added. As corroboration there was the rental contract signed by defendant and the record of visits indicating by defendant's signatures thirty-eight visits thereto.

■ To prove defendant placed no proceeds of the $10,583.04 check in a bureau drawer (Count IV) the government relied upon the foregoing evidence, particularly that under Count I. The various witnesses and circumstances were competent for that purpose. The government need not corroborate the particular circumstances but merely prove the falsity of the oath itself. United States v. Palese, 3 Cir., 133 F.2d 600, at page 603; United States v. Seavey, supra, 180 F.2d at page 840; United States v. Hiss, 2 Cir., 185 F.2d 822, at page 830; United States v. Moran, supra, 194 F.2d at page 627; Com. v. Schindler, 170 Pa. Super. 337 at page 342, 86 A.2d 151; Com. v. Gore, 171 Pa.Super. 8 at page 13, 90 A.2d 405.

"The general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment * * *." Hammer v. United States, 1926, 271 U.S. 620, at page 626, 46 S.Ct. 603, 604, 78 L.Ed. 1118, and see Weiler v. United States, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495, 156 A.L.R. 496; Maragon v. United States, 1950, 87 U.S.App.D.C. 349, 187 F.2d 79.

■ The converse is also true: the direct testimony of one witness is sufficient[4] if that testimony is supported by proof of corroborative circumstances. United States v. Palese, supra, 133 F.2d at page 602; United States v. Seavey, supra, 180 F.2d at page 839; United States v. Nessanbaum, 3 Cir., 205 F.2d 93.

" * * * the rule * * * does not relate to the kind or amount of other evidence required to establish that fact." Hammer v. United States, supra, 271 U.S. at

---

3. There was a conflict as to what happened to this check and the proceeds thereof. The jury could accept what it deemed credible and reject the rest. United States v. Reginelli, 3 Cir., 1943, 133 F. 2d 595, at page 598.

4. Documentary or written testimony springing from the defendant himself may take the place of a living witness. United States v. Wood, 1840, 14 Pet. 430, 39 U. S. 430, 10 L.Ed. 527.

page 627, 46 S.Ct. at page 604, and see Vetterli v. United States, supra, 198 F.2d at page 293; United States v. Marachowsky, 7 Cir., 1953, 201 F.2d 5.

"As to the nature of the corroboration, no detailed rule seems to have been laid down, nor ought to be laid down." VII, Wigmore on Evidence, 3d Ed. § 2042, pp. 278–279.[5]

"Two elements must enter into a determination that corroborative evidence is sufficient: (1) that the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement; (2) that the corroborative evidence is trustworthy. To resolve this latter question is to determine the credibility of the corroborative testimony, a function which belongs exclusively to the jury." Weiler v. United States, supra, 323 U.S. 606, at page 610, 65 S.Ct. 548, 550, 89 L.Ed. 495, 156 A.L.R. 496. "The jury should be instructed not to convict unless the testimony of the principal witness has been so corroborated that they believe it to be true beyond a reasonable doubt." Wigmore Id.

"Beyond that the rule requires nothing." Com. v. Schindler, supra, 170 Pa.Super. at page 342, 86 A.2d 151, 153; Com. v. Gore, supra, 171 Pa.Super. at page 14, 90 A.2d 405.

 The several business records were duly authenticated. See 28 U.S.C.A. § 1732; 28 P.S.Pa. § 91b; Mass. Bonding & Insurance Co. v. Norwich, 2 Cir., 1927, 18 F.2d 934, at page 937; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467, at page 473. The circumstances under which they were prepared go to their weight rather than admissibility.

Congress has power to prescribe what evidence is to be received in federal courts. Tot v. United States, 319 U.S. 463, at page 467, 63 S.Ct. 1241, 87 L.Ed. 1519. There was no violation of the VI Amendment to the United States Constitution. See United States v. Leathers, 2 Cir., 1943, 135 F.2d 507.[6]

 The records were admissible as corroboration. United States v. Seavey, supra, 180 F.2d at page 839; Littieri v. Freda, 241 Pa. 21 at page 30, 88 A. 82; In re Croushore's Estate, 79 Pa.Super. 286 at page 289; Grosch v. Trexler, 66 Pa.Super. 485; Henry Pennsylvania Trial Evidence, 3d Ed. 1940, § 104; 2 Wharton Criminal Evidence, 11th Ed. § 809;[7] and see Butler v. United States, 10 Cir., 1931, 53 F.2d 800, at page 806.

Defendant argues that none of the records were admissible because a witness could not be corroborated by business records if he had anything to do with their preparation or supervision. Further, that corroboration must come from a separate and independent source equivalent to another witness. In support of his claim defendant relies upon a case cited in Wigmore § 2042, Note 5, sub. nom., R. v. Boulter, 1852, 2 Den.Cr.C. 3966, 5 Cox Cr. 543, 16 Jur. 135, holding that entries made at the time by a single witness were insufficient because "it is corroborating him by himself". But see in the same footnote R. v. Webster, 1859, 1 F. & F. 515, holding that a memorandum made at the time by a single witness was sufficient.

The question was raised but not answered in United States v. Goldstein, 2 Cir., 168 F.2d 666 at page 668. It was decided contrary to the defendant's position in United

5. United States v. Nessanbaum, supra, 205 F.2d 93, 95 (Footnote 4), "Corroborating circumstances * * * merely support the inference that the defendant was lying." And see Gordon v. United States, 8 Cir., 1925, 5 F.2d 943, at page 945; Vetterli v. United States, supra, 198 F.2d at page 293; United States v. Hall, D.C., 44 F. 864 at page 869, 10 L. R.A. 324; Com. v. Antico, 146 Pa.Super. 293 at page 319, 320, 22 A.2d 204; Com. v. Rossi, 1952, 170 Pa.Super. 292 at page 299, 85 A.2d 598.

6. A school record used as a basis for the grand jury inquiry was not used to establish defendant's guilt in the perjury proceedings.

7. And see Catrino v. United States, 9 Cir., 1949, 176 F.2d 884 at page 888; Goins v. United States, 4 Cir., 1938, 99 F.2d 147 at page 149; Sharron v. United States, 2 Cir., 1926, 11 F.2d 689; Thacker v. United States, 5 Cir., 1946, 155 F.2d 901, at page 902.

States v. Seavey, supra, 180 F.2d at page 840, where Judge Goodrich distinguishes between the Seavey case and Regina v. Boulter, 175 Eng.Rep. 535 (N.P.1852) affd. 169 Eng.Rep. 554 (Cr.App.1852) stating that whereas in the Boulter case the books were used to refresh the witness' memory, in the Seavey case, as here, the books and records were in evidence and constituted "circumstantial corroboration".

As to the source of the corroboration there is language somewhat misleading in some cases.[8] The correct doctrine is, however, that announced in the cases heretofore cited and applied. We hold that the evidence was sufficient in quantity and quality to sustain the verdict.

 The charge of the court must be read as a whole. United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 177. The correct principles of law having already been stated and applied in our charge, it was not necessary to follow the exact language of tendered instructions. United States v. Quick, 3 Cir., 1942, 128 F.2d 832, at page 835; Sugarman v. United States, 249 U.S. 182, 39 S.Ct. 191, 63 L.Ed. 550.

 The perjurious statements were made on defendant's first appearance before the grand jury. He appeared again on three dates thereafter. His testimony covered other matters besides the statements covered in the indictment. The parts spelled out in the indictment were not restricted to the critical questions and answers but were placed in their proper setting, in context. Defendant requested examination of the transcript of his entire testimony. See and cf. Boehm v. United States, 8 Cir., 1941, 123 F.2d 791 at page 807. He stated that because of the length of his testimony and his ill health (a claim seriously challenged) he could not remember all of it; that his counsel were thereby prejudiced in preparing his case. Of themselves these were insufficient reasons to warrant disclosure. See Note 27 L.R.A.,N.S., 558; 23 C.J.S., Criminal Law, § 956, pp. 265–267; State v. Rhoads, 81 Ohio St. 397, 91 N.E. 186, 27 L.R.A.,N.S., 558; Com. v. Galvin, 1948, 323 Mass. 205, 80 N.E.2d 825 at page 830; People v. Steinhardt, 47 Misc. 252, 93 N.Y.S. 1026; State v. Hayes, 127 Conn. 543, 18 A.2d 895, at page 914; People v. Browne, 184 Misc. 764, 54 N.Y.S.2d 759.

He stated further that all his testimony was not in the indictment; that the part contained therein was taken out of context, and that other parts thereof would give a wholly different meaning thereto and nullify the existence of perjury. The claim of error in refusing defendant's request to inspect was raised for the first time in defendant's brief filed more than five days after the verdict. See and cf. Federal Rules of Criminal Procedure, rule 33, 18 U.S.C.A. and United States v. Smith, 331 U.S. 469,

---

8. See and cf. "* * * proved by other witnesses * * *." Com. v. Rogo, 1919, 71 Pa.Super. 109 at page 115. "* * * by independent testimony of witnesses." "* * * by another witness swearing to circumstances * * *." Phair v. United States, 3 Cir., 1932, 60 F.2d 953, 954. "* * * by independent proof of circumstances which takes the place of the evidence of the second witness * * *." United States v. Isaacson, 2 Cir., 1932, 59 F.2d 966, 968, "* * * tantamount to that of another witness' testimony. * * *" State v. Hardiman, 277 Mo. 229, 209 S.W. 879, 880. But see Underhill Criminal Evidence, 4th Ed. § 737, p. 1354, "* * * It need not be equivalent or tantamount to another witness." 2 Wharton Criminal Evidence, 11 Ed. § 913, p. 1580, "* * * It need not be of sufficient force to equal the positive testimony of another witness * * *."
Properly understood the following are consistent with the rule applied: "* * * one witness plus independent evidence * * *." Bridges v. United States, 1952, 9 Cir., 199 F.2d 811 at page 841. "* * * supported by independent evidence". United States v. Buckner, 2 Cir., 118 F.2d 468, 469. "* * * independent proof of facts * * *." United States v. Hiss, 2 Cir., 1950, 185 F.2d 822 at page 824. "* * * proved by independent evidence". Hashagen v. United States, 8 Cir., 169 F. 396 at page 399. "Circumstances independently proven." Clayton v. United States, 4 Cir., 284 F. 537 at page 540. "Independent corroborating evidence". McWhorter v. United States, 5 Cir., 193 F.2d 982 at page 983.

at pages 473, 475, 476, 67 S.Ct. 1330, 91 L. Ed. 1610. Nevertheless we have reviewed the entire matter.

■ Traditionally, grand jury proceedings are privileged from disclosure. In the absence of strong reasons to the contrary the rule ought not to be departed from.[9]

In United States v. Johnson, supra, 319 U.S. at page 513, 63 S.Ct. 1233, 87 L.Ed. 1546, there is a strong caveat against needless intrusion upon the secrecy of grand jury proceedings, especially as to granting ready resort to transcripts of testimony. See United States v. Holmes, 3 Cir., 1948, 168 F.2d 888 at page 890, and see Leahy J. in United States v. Papaioanu, supra, 10 F.R.D. 517 at page 518, "The same admonitions articulated by Judge Learned Hand in 1909 * * * are as cogent today * * *."

■ In the exercise of judicial discretion to determine whether any part of the transcript should be made available to defendant, we carefully made a judicial reading of defendant's entire testimony. See United States v. Socony-Vacuum Oil Co. Inc., 1940, 310 U.S. 150 at page 232, 234, 60 S.Ct. 811, 84 L.Ed. 1129; Boehm v. United States, supra, 123 F.2d at pages 807, 808; United States v. Mascuch, S.D.N.Y.1939, 30 F.Supp. 976. We looked to see if anything pertinent was omitted from the indictment; whether the part contained therein was taken out of context giving a different meaning than when uttered, see Fotie v. United States, 8 Cir., 1943, 137 F. 2d 831 at page 842; Meyers v. United States, 84 U.S.App.D.C., 101, 171 F.2d 800 at 806, 807, 11 A.L.R.2d 1; whether there was evidence of an innocent mistake and the correction thereof, or elaboration of incompleted answers. Realizing that any change, correction or recantation of a knowingly false statement would not remove the stigma thereof, United States v. Margolis, 3 Cir., 1943, 138 F.2d 1002, 1003; Llanos-Senarillos v. United States, 9 Cir., 1949, 177 F.2d 164; 41 Am.Jur.Perjury, § 7, p. 7, nevertheless we searched therefor but found none to exist. We found that there was none of defendant's testimony not spelled out which would have any bearing on defendant's guilt or innocence on the charge of perjury, and that the testimony actually included was placed in proper context insofar as the perjurious answers were concerned.

■ Does the doctrine of completeness require more? One of the qualifications of the rule is that "(a) no utterance irrelevant to the issue is receivable; (b) no more of the remainder of the utterance than concerns the same subject and is explanatory of the first part is receivable." See Wigmore § 2113; United States v. Katz, supra, 78 F.Supp. at page 440. There is a distinction between the situation where the prosecution used the transcript of testimony in cross examination and where the court itself does so. See United States v. Socony-Vacuum Oil Co., supra, 310 U.S. 150, 60 S.Ct. 811, and People v. Miller, 1931, 257 N.Y. 54, 177 N.E. 306, Cardozo J. in United States v. Cotter, 2 Cir., 1932, 60 F.2d 689 at page 692, where the prosecuting attorney used the transcript, Judge Learned Hand ruled that a judicial reading and separation was not sufficient. We feel however that the practice approved in the Socony case

9. United States v. Southmayd, C.C.Wis., 1875, 27 Fed.Cas. pages 1275, 1276, No. 16,361; see L. Hand J. in United States v. Violon, C.C.S.D.N.Y.1909, 173 F. 501 at page 502, United States v. Garsson, D.C.S.D.N.Y.1923, 291 F. 646 at page 649, Kastel v. United States, 2 Cir., 1927, 23 F.2d 156 at page 158; United States v. Seidman, D.C.M.D.Pa. 1930, 45 F.2d 178; United States v. American Medical Ass'n, D.C.D. of C. 1938, 26 F.Supp. 429; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110 at page 113, 133 A.L.R. 1040; United States v. National Wholesale Druggists' Ass'n, D.C.N.J.1945, 61 F.Supp. 590 at page 593; Leahy J. in United States v. Papaioanu, D.C.Del., 1950, 10 F.R.D. 517 at page 518; United States v. Owen, D. C.Mo.1951, 11 F.R.D. 371 at page 374; Wigmore on Evidence, 3d Ed. § 1850 and see § 2362; 2 Wharton Criminal Evidence, 11th Ed. § 785, p. 1355; Federal Rules of Criminal Procedure, rule 6(e), 18 U.S.C.A., and see New York University School of Law Institute Proceedings, pp. 154, 177, 178 and see Metzler v. United States, 9 Cir., 1933, 64 F.2d 203 at page 206.

782

where the judge himself used the transcript states the rule by which we should be governed. Cf. United States v. Remington, supra, 191 F.2d 246 at page 251.

■ Was the accused entitled to the entire transcript under the principle of United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503? That case holds that an accused charged with conspiracy must be given access to his own official reports which might directly support his defense, even though disclosure thereof was forbidden by administrative regulation. It was in reliance upon the Andolschek case that the court in United States v. Remington indicated that the defendant should have access to the grand jury minutes of his own testimony. There, however, the questions and answers were placed in the indictment completely out of context; a judicial reading was not discussed. Involved was a not unambiguous act requiring proof of mental state (see United States v. Remington, supra, 191 F.2d at page 249) a subjective matter not an objective fact as here. See and cf. Chief Judge Reeves in United States v. Owen, D.C., 11 F.R.D. 371 at page 374, "In the instant case the immediate context relating to the claimed false testimony has been lifted out and incorporated in each count of the indictment * * * he either had the transactions alleged in the indictment or he did not. It would be difficult to infer that any other testimony would qualify or explain this positive and categorical answer." In addition here we have a judicial reading and a determination that defendant's rights were properly protected and preserved.

Relying upon United States v. Remington and other cases [10] the court in United States v. White, D.C.N.J.1952, 104 F.Supp. 120, ruled that in all perjury actions based upon defendant's testimony before a grand jury the defendant was entitled to a transcript of his testimony. This would remove the matter from the area of discretion in

the court to that of an absolute right of the defendant. In the White case, the critical questions and answers were apparently set forth in the indictment completely out of context. The accused appeared before the grand jury on only one day; a judicial reading was apparently not considered. The holding appears to be a novel one. See United States v. Owen, supra, 11 F.R.D. 371; People v. Browne, supra, 184 Misc. 764, 54 N.Y.S.2d 759. The precise problem was not discussed during the institute proceedings on the Federal Rules of Criminal Procedure; the prevailing sentiment was however to the contrary. See Id. p. 179. In fact, the holding in United States v. White, if sustained, amounts to an unwritten exception to Rule 6(e). We do not agree.

■ Where a transcript of testimony is a basis for a claim of immunity from prosecution and is the best evidence of what basis there is, if any, for the claim, the transcript should be produced at least for judicial reading. Such was the problem in Edwards v. United States, supra, 312 U.S. 473, 61 S.Ct. 669, involving testimony before an S.E.C. investigator.

In the Boehm case defendant was indicted for perjury based upon testimony given before an officer of the Securities and Exchange Commission. He had already received a transcript of his own testimony, 123 F. at pages 805–806. He however sought a transcript of testimony given by other witnesses for purposes of impeachment. The court held under the circumstances there was no error in denying the request. See, however, the language of the court, 123 F.2d at pages 807–808, condemning the practice of the trial court and suggesting the propriety of a judicial reading as a basis for an intelligent ruling.

In view of all of the foregoing, orders will be filed herewith denying defendant's motions.

---

10. Boehm v. United States, supra, 123 F. 2d 791; United States v. Andolschek, supra, 142 F.2d 503; United States v. Byoir, D.C.Tex.1945, 58 F.Supp. 273, but see United States v. Byoir, 5 Cir.,

1945, 147 F.2d 336; Edwards v. United States, 1941, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957, and we add Havenor v. State, 125 Wis. 444, 104 N.W. 116.